DE LANCEY T. SMITH and GEORGE J. SOPER, Appellants,
*v.* WINDER E. GOLDSBOROUGH, Respondent.

First Department, November 9, 1917.

**Contract — agreement of real estate broker to share commissions —
additional commissions paid by principal to person assisting
agent — when receipt of additional commissions not fraud as
against agent — right of agent to compel associate to account —
written modification of contract without consideration.**

Suit to compel the defendant, who was employed by the plaintiff to assist
him in effecting a sale of oil wells, to account for a portion of commissions
received by the defendant for negotiating such sale. It appeared that
the plaintiff was employed by the owners of the oil properties to procure
a purchaser therefor and was to receive for his services five per cent as
a commission, there being no statement that the commissions were to be
limited to said percentage on cash received on the sale. The plaintiff
employed the defendant to aid him in finding a purchaser and agreed
to pay the defendant three-fourths of the five per cent commissions to
which the plaintiff might become entitled. The properties were finally
sold to a corporation which paid to the owners as a consideration certain
moneys and issued to them a certain portion of its capital stock. Pending
the negotiations for the sale the owners of the oil properties made an
agreement with the defendant to pay him commissions in addition to
those he would receive from the plaintiff if a sale were effected, and under
this agreement the defendant actually received certain stocks of the
purchasing corporation, and it is to compel the defendant to account
therefor that the plaintiff sues.

*Held*, that as the defendant's contract with the plaintiff entitling him to
three-fourths of the plaintiff's commissions did not require the defendant
to use his best efforts to make a sale there was no partnership or joint
venture between them, and that the defendant by accepting additional
commissions from the owners of the property did not violate any duty
that he owed to the plaintiff;

That the plaintiff was entitled to compel the defendant to account for
one-fourth of the five per cent to which the plaintiff was entitled under
his contract with the owners, including the value of stocks received by
the defendant, for the commissions were not to be based solely upon
cash received on the sale.

It further appeared that while the plaintiff was ignorant of the owners'
agreement to pay additional commissions to the defendant, he was
induced to send a letter to the defendant stating that the latter should
look to the owners of the oil properties for his commissions which could

be paid directly to him and further acknowledging that the defendant had no further obligations to the plaintiff.

*Held,* that the letter was ineffective to alter the plaintiff's rights under the original contract, for, if it were intended to effect a modification of said contract, there was no consideration and at the most it could only operate as an estoppel against the owners of the oil properties in case the plaintiff were seeking to recover from them instead of from the defendant.

APPEAL by the plaintiffs, De Lancey T. Smith and another, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 13th day of July, 1916, dismissing the complaint upon the decision of the court after a trial at the New York Special Term.

*George E. Coney,* for the appellants.

*Frederick T. Kelsey,* for the respondent.

SMITH, J.:

Richmond Levering and Richmond Levering & Company were the owners of certain oil properties in Mexico. They made a contract with the plaintiffs and one Jewell, acting as copartners, to procure the sale of these properties, and agreed to give to the plaintiffs five per cent as commissions. In this contract no mention was made of " cash " sale or commission. The plaintiffs engaged the defendant, who had strong financial connections, to assist them, and agreed to pay the defendant three-fourths of the five per cent commissions, they to retain one-fourth thereof. In this contract, also, the commissions were not limited to cash received. The defendant proceeded to investigate the properties, and become acquainted with the facts relating thereto, and in one of the negotiations it was contemplated that $500,000 was to be paid for the properties. This negotiation, however, fell through. A corporation was finally formed called the Port Lobos Petroleum Company, Ltd., which corporation took the property, and to Levering and the Levering Company was given certain stock in that corporation, and moneys were apparently advanced to them in addition to the stock received. While such negotiations were pending, Levering and the

Levering Company made a contract with the defendant to give to the defendant a commission " equivalent to 10% of the amounts of cash when and as received," and " as additional commission stocks in the several companies or properties to the extent of 15% in kind of the amount in each company or property which is sold said parties." A further commission and bonus " *pro rata* in kind of said stock and /or properties that will make the par value of stock and /or property received by you at any time up to the time that $1,000,000 has been received by us or our companies or properties, equal to the aggregate of the sums received by us or our companies or properties." This contract between Levering and Levering & Co. and the defendant was concealed from the plaintiffs, and, furthermore, the plaintiffs had no knowledge of the nature of the transactions by which the properties of the Leverings were transferred to the new corporation. Without disclosing that the defendant was to receive any stock as part of his commission the defendant procured the plaintiffs to write him a letter, of which the following is a copy:

" NEW YORK, *September* 26, 1914.

" Mr. W. E. GOLDSBOROUGH,

" 30 Church Street,

" New York:

" DEAR SIR.— Referring to the matter of commissions payable on account of moneys secured through your efforts and paid to Richmond Levering & Co., or Richmond Levering or any of their Mexican oil corporations, we hereby authorize Richmond Levering & Co., Inc., and Richmond Levering to recognize your demand upon them for your commission, and to pay your commission directly to you, and authorize and request you to look to them and not to us for your commission, and hereby acknowledge that you have no obligation to us or we to you in the matter of the payment of the commission."

What the defendant has received is unknown to the plaintiffs, and this action is brought to compel the defendant to account for one-fourth of the commissions or compensation received by him for negotiating the purchase of these companies by this new corporation.

It is apparent that it was at first contemplated that these

oil properties should be sold in bulk for cash and that the plaintiffs were to receive five per cent of the cash purchase price, which five per cent was to be divided according to the arrangement afterwards made with the defendant, the plaintiffs retaining one-fourth thereof and the defendant becoming entitled to three-fourths thereof. Under this arrangement it would seem clear that if the properties were sold for anything other than cash and the defendant received his commission in stocks as well as cash, the plaintiffs would as well be entitled to one-fourth of those commissions up to the five per cent which was stipulated for in the contract between the Leverings and the plaintiffs and in the contract between the plaintiffs and the defendant. I am unable to find any partnership or any joint venture as that term is usually employed. The defendant was not bound to use his best endeavors to make a sale; he did not so stipulate. If he made a sale he was entitled to three-fourths of the five per cent commission that the plaintiffs would receive. Nor can I see any breach of duty to the plaintiffs in the defendant making a further contract for further commissions from Levering & Co. If he were not bound to use his best endeavors in his contract with the plaintiffs, then clearly Levering & Co. might stimulate him to more active endeavor by offering him extra commission and extra compensation. The receipt of extra commission would in no way work against the plaintiffs' interest, but rather stimulate defendant to extra endeavor to complete the sale and earn for the plaintiffs the one-fourth of the five per cent for which the plaintiffs had contracted. There is, therefore, no breach of trust and no reason that I can discover why the defendant cannot stipulate for an extra commission. The defendant did so stipulate, and procured a contract for ten per cent cash, receiving fifteen per cent stock and a certain bonus besides. Of this amount so stipulated five per cent of the cash received and five per cent of the stock received would be received under the contract originally made between the Leverings and the plaintiffs, and the plaintiffs would be entitled to one-fourth of the five per cent both of the cash and of the stock received by the defendant. If this be the correct interpretation of the rights of the parties, then the plaintiffs' complaint was improperly dismissed, and the

defendant should be compelled to account for one-fourth of the moneys and the stock received up to five per cent thereof.

Some confusion has been brought into the case by plaintiffs' attempt to have canceled and delivered up this letter of September twenty-sixth as having been fraudulently obtained, and the trial court seems to have found that the defendant was guilty of no fraud in obtaining the letter. This to my mind presented an immaterial issue. If the letter be deemed to have been intended to alter the original contract, it was without consideration and failed to effect such alteration. As far as it gives an authority to Richmond Levering & Company to pay to the defendant, it could only operate as an estoppel in an action against Richmond Levering & Company in case the plaintiffs were seeking to recover from that company property which had been delivered to Goldsborough upon the faith of this letter. It could not alter the legal effect of the original contract because, *first*, it is without consideration, and *second*, without knowledge of the fact that stocks were in fact to be paid to the defendant as part of the commissions. It is inconceivable that the plaintiffs, without any consideration whatever, should give to the defendant their rights to stocks received as part of the commission and confine themselves to a claim for one-fourth of the five per cent of the moneys received, if the plaintiffs had any knowledge of the fact that the commission was payable partly in moneys and partly in stocks. The gift, if intended, would be ineffectual, but no such intention can be gleaned from the papers, and the plaintiffs are left with their original rights of one-fourth of the commission of five per cent stipulated for in their contracts.

The judgment should, therefore, be reversed and a new trial granted, with costs to appellants to abide the event.

Findings of fact numbers 3, 6, 7 and 16 are reversed as far as they find that the agreement was limited to a percentage of the " cash " received.

CLARKE, P. J., SCOTT and DAVIS, JJ., concurred.

Judgment reversed and new trial ordered, with costs to appellants to abide event. Order to be settled on notice.